# Exhibit "A(1)"

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | )<br>) Case No. 09-B-29024 |
| ARENA FOOTBALL LEAGUE, LLC, | )<br>) Chapter 11 |
| Debtor. | )<br>)<br>) Hon. Susan Pierson Sonderby<br>) |

## PROPOSED BIDDING PROCEDURES FOR SALE OF ASSETS OF DEBTOR

Set forth below are the sale and bidding procedures (the "Bidding Procedures") to be employed with respect to the sale and to the selection of the highest and best bid(s) for the sale by Arena Football League 1,1.C', debtor in the above captioned case ("Debtor") acting by and through its Chapter 11 trustee, Alex 1). Moglia (the "Trustee") of substantially all of the Debtor's personal property and the assumption and assignment of executory contracts, as more particularly described on Exhibit A attached hereto (collectively. the "Listed Assets"). The Trustee will conduct an auction or a series of auctions (collectively, the "Auction") for the sale (the "Sale") of the Listed Assets if one or more Qualified Bids (as hereinafter defined) are timely submitted. Upon the conclusion of the Auction, the Trustee, on behalf of the Debtor and its estate, will seek the entry of an order from the Bankruptcy Court authorizing and approving the Sale to the one or more Qualified Bidders (as hereinafter defined) that is determined by the Trustee to have made the highest, best or otherwise financially superior hid at the Auction (the "Successful Bidder(s)") subject to the rights of any party to object to that determination.

*Further information about the Listed Assets and the sale procedures described herein may be obtained from:*

Diana L. Casas
Moglia Advisors
1325 Remington Road, Suite H
Schaumburg, IL 60173
Tel: (847) 884-8282
Fax: (847) 884-1 188
E-mail: dcasas@mogliaadvisors.eom

Pursuant to an order of the Bankruptcy Court entered on October 2009, the Bankruptcy Court approved these Sale & Bidding Procedures. The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider entry of an order (the "Sale Order") authorizing and approving the Sale of some or all of the Listed Assets to the Successful Bidder(s) pursuant to the terms and conditions set forth below and in definitive sale documentation.

### Assets to be Sold Free and Clear of Liens and Interests

The Trustee is offering for sale (the "Sale") the Listed Assets of the Debtor and the assumption and assignment of designated executory contracts of the Debtor to be identified by Qualified Bidders (the "Designated Contracts") after curing any defaults thereunder at the bidder's sole expense. Such Sale shall be free and clear of all liens, encumbrances, pledges, security interests, claims, ownership and other interests and successor liability of any type whatsoever (collectively, the "Interests") pursuant to the order of the Bankruptcy Court under sections 363(f) and 365 of the Bankruptcy Code (the "Required Order").

### The Bidding Process

After consultation with counsel for Fifth Third Bank (the "Bank") and, following the execution of a confidentiality agreement, counsel for the Official Committee of Unsecured Creditors for the Debtor (the "Committee"), the Trustee shall: (i) determine whether any person is a Qualified Bidder (hereinafter defined), (ii) coordinate the efforts of Qualified Bidders in conducting their due diligence investigations, (iii) receive bids from Qualified Bidders, and (iv) negotiate any bids made to purchase any of the Listed Assets (collectively, the "Bidding Process"). Any person who wishes to participate in the Bidding Process must be a Qualified Bidder and must make a Qualified Bid. Except for non-confidential information about the sale that the Trustee may distribute to identify potentially interested bidders who may become Qualified Bidders, the Trustee shall not be obligated to furnish any confidential information about the Listed Assets or Debtor's Business to any person who is not determined to be a Qualified Bidder. The Trustee shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) so long as those rules better promote the goals of the Bidding Process and are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

In the event that the Trustee, in his reasonable discretion, determines that it is necessary to agree to expense reimbursement (up to a cap of $75,000) (the "Bidder Protection") in order to induce a Qualified Bidder to submit a Qualified Bid (as defined below) for all of the Listed Assets in the amount of $2.5 million or more, the Trustee may by motion seek to designate that bid as the "Stalking Horse" bid for the Sale and obtain Bankruptcy Court approval for the Bidder Protection. Such Stalking Horse bid shall not be subject to a financing or due diligence contingency.

The Trustee shall consult with counsel for the Bank and the Committee in connection with the Bidding Process, the determination of Qualified Bidders, Modifications of the Bid Rules and the Successful Bid(s) and Back-Up Bid(s), provided that the Trustee's determination shall be final except for the Bankruptcy Court's approval of the Sale.

### Due Diligence

Unless otherwise ordered by the Bankruptcy Court or determined by the Trustee after consultation with counsel for the Bank and the Committee, each person (a "Potential Bidder") interested in participating in due diligence regarding the Listed Assets must deliver (unless previously delivered) to the Trustee an executed confidentiality agreement.

2

Subject to the requirement that bidding he completed by the Bid Deadline, the Trustee must afford any Potential Bidder, who has signed a confidentiality agreement, the time and opportunity to conduct reasonable due diligence prior to its submission of a bid. The Trustee or his representatives will coordinate all reasonable requests for additional information from and due diligence access for such bidders. The Trustee or his representatives shall provide each such Potential Bidder reasonable access to all written due diligence information requested by each such Potential Bidder which is not subject to the attorney-client or work product privilege of the Debtor or Trustee, shall provide each such Potential Bidder with all due diligence information provided to other Potential Bidders for the same Listed Asset(s), and shall provide substantially the same access to each Potential Bidder to the Debtor's hooks and Records. The Trustee, his agents and Debtor are not responsible for, and will bear no liability with respect to, the accuracy or completeness of any information provided to, or obtained by bidders in connection with the sale of the Listed Assets.

## Bid and Bidder Qualification Deadline

A Potential Bidder who desires to make a bid shall deliver a written copy of all documents required by the Bid Requirements and the Good Faith Deposit (defined below) to the Trustee. In order to be considered, such materials must be received by the Trustee not later than 12:00 p.m. noon (prevailing Central Time) on _____, 2009[1] (the "Bid Deadline"). As promptly as possible after such deadline, the Trustee shall distribute copies of the bids to representatives of the Bank and the Committee and give notice to nonbankrupt counterparties to Designated Contracts and Added Contract of the proposed assumption and assignment thereof, the Cure Costs, the Sale Hearing and the deadline for objecting to the assumption and assignment of such contracts.

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents") and meet the following requirements:

(i)    A letter stating that the bidder's bid is irrevocable until the later of the Closing of the sale of the Listed Assets or 30 days after the Sale Hearing.

(ii)    An executed copy of an asset purchase agreement marked to show modifications to the form agreement (the "Form APA") approved by the Bankruptcy Court (the "Marked Agreement"), which (a) may not be subject to a contingency for financing or due diligence after the Bid Deadline and (b) must specify the Listed Assets to be purchased and (c) be in form and substance satisfactory to the Trustee and his counsel.

(iii)    The asset purchase agreement shall also indicate which executory contracts the bidder proposes that the Trustee *assume* and assign (the "Designated Contracts"). Prior to the Bid Deadline, the bidder may remove Designated Contacts or add any additional contracts to be assumed and assigned after the initial bid (the "Added Contracts"), in each case specifying the amount that the bidder will pay

---

[1] Approximately 30 days after Bid Procedures Hearing.

3

to cure defaults (the "Cure Costs") thereunder and evidence of the Potential Bidder's ability to provide adequate assurance of future performance of such contracts and leases. Additionally, the Qualified Bidder must covenant to close on such bid on or before December 18, 2009 and, if selected as the Back-Up Bid, to keep its bid open for at least thirty (30) days after the Sale Hearing (defined below) and be prepared to close if the Successful Bidder(s) for the same Listed Assets does not close within fifteen (15) days after the Sale Hearing.

(iv)    A good faith deposit (the "Good Faith Deposit") in the form of an escrow in an amount equal to the lesser of $250,000.00 or 20% of the Required Bid Value of the Listed Assets subject to the bid.

(v)    Written evidence of a commitment for financing without contingencies or other evidence of the ability to consummate the Sale satisfactory to the Trustee, after consultation with counsel for the Bank and the Committee, with appropriate contact information for such financing sources.

A bid received from a Qualified Bidder that includes all of the Required Bid Documents and meets all of the above requirements is a "Qualified Bid".

There is no requirement that a Qualified Bid include all of the Listed Assets. The Trustee, after consultation with the Bank and Committee, reserves the right to determine (i) the value of any Qualified Bid, (ii) whether any Qualified Bid (either by itself or in connection with another Qualified Bid(s)) provides overall value that is equal to, or in excess of, any bulk bid or any other Qualified Bid(s), and (iii) which Qualified Bid(s) constitutes the highest and best bid(s). The trustee's determination in this regard may include an analysis of the value (whether positive or negative) of any assets that are included in or excluded from any Qualified Bid(s) and the existence or absence of any escrow or indemnity.

### Determinations and Disclosure By the Trustee of Qualified Bids

The Trustee, after consultation with the Bank and Committee, will determine, based on information submitted by the Potential Bidder(s), the availability of financing, experience and other considerations deemed relevant by the Trustee, whether the bid is a Qualified Bid and the Proposed Bidder is a qualified bidder ("Qualified Bidder") who has made a bona fide bid and is able to consummate the Sale if selected as a Successful Bidder. No later than two (2) Business Days after a Potential Bidder delivers all of the materials required by these procedures, the Trustee shall inform such Potential Bidder, counsel for the Bank and counsel for the Committee of its determinations under this paragraph. As used herein, "Business Day" means any day (other than a Saturday or Sunday) in which national banks are open to receive deposits in Chicago.

The Trustee shall announce the terms of the highest and best Qualified Bid(s) received by the Bid Deadline no later than _____ a.m. (prevailing Central time) on _____, 2009 (two Business Days preceding the Auction) and circulate the terms of such Qualified Bid to counsel for the Bank, counsel for the Committee, and all Qualified Bidders.

4

### "As Is, Where Is"

The sale of the Listed Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Debtor, the Trustee, his agents, or the Debtor's estate except to the extent set forth in the applicable agreement(s) of the Successful Bidder(s) as accepted by the Trustee. Except as otherwise provided in the applicable agreement(s), all of Debtor's right, title and interest in and to the Listed Assets subject thereto shall be sold free and clear of all Interests in accordance with sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of such Listed Assets.

### Auction

If one or more Qualified Bids are received, the Trustee, in consultation with counsel for the Bank and the Committee, shall conduct an Auction (including a series of auctions) with respect to some or all of the Listed Assets. The Auction shall take place at the offices of counsel for the Trustee, Tressler LLP, 233 South Wacker Drive, Suite 2200, Chicago, Illinois, or such other place or places determined by the Trustee or his professionals and on such dates and times as determined by the Trustee, after consultation with counsel for the Bank and the Committee. The Trustee, after consultation with counsel for the Bank and the Committee, shall determine if a particular Auction shall be by telephone, Internet or meeting. The Trustee shall notify all Qualified Bidders who have submitted Qualified Bids of the date, time, place and manner of the Auction. If the Trustee has designated a Stalking Horse Bid and the Trustee receives no other timely Qualified Bid, the Stalking Horse Bid shall be deemed to be the Successful Bidder.

Only a Qualified Bidder who has submitted a Qualified Bid is eligible to participate at the Auction. During the Auction, bidding for all or any Listed Assets shall begin with the highest Qualified Bid for such Listed Asset or group of Listed Assets as determined by the Trustee, in consultation with counsel for the Bank and the Committee, and subsequently continue in minimum increments of at least $100.000 for the Listed Assets in bulk or $50.000 for any lot of Listed Assets (or such lesser amount determined by the Trustee, after consultation with counsel for the Bank and the Committee, based on the lot bids). In the event that the Trustee selects a Stalking Horse Bid, after consultation with counsel for the Bank and the *Committee,* the initial overbid must be sufficient to *pay* the cost of the Bidder Protection plus the minimum bid increment. Other than as disclosed herein, the Trustee may conduct the Auction in the manner it determines will result in the highest and best bid(s) for the Listed Assets.

Without submitting a bid prior to the Bid Deadline, the Bank shall be entitled to make a credit bid at the Auction (a) the outstanding principal amount of Bank's pre-petition secured loans to the Debtor and accrued interest thereon as of the Auction (the "Pre-Petition Secured Obligations"); and (b) in the outstanding principal amount of the Bank's post-petition loans to the Trustee and accrued interest as of the Auction (the "Trustee Loan Obligations"), in each case, provided the collateral therefore is included in the Listed Assets to be acquired by the Bank in such bid. In the event the Lender makes a credit bid and successfully acquires the Listed Assets, then the Trustee shall be entitled to 3% of the amount of such credit bid was actually paid in cash by the Lender and disbursed by the Trustee after the application of the Carve-Out provided in any interim or final borrowing order.

5

Upon conclusion of the bidding, the Auction shall be closed. The Trustee shall, in consultation with counsel for the Bank and counsel for the Committee (i) immediately review each Qualified Bid or Bids on the basis of the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) within one Business day identify the highest, best or otherwise financially superior bid(s) for the Listed Assets (the "Successful Bid(s)"), which highest, best or otherwise financially superior bid(s) will provide the greatest aggregate amount of net value to Debtor's estate, and advise the Bank, its counsel, counsel for the Committee and all Qualified Bidders of such determination; provided, however that for any Qualified Bidder to have a Successful Bid for a Lot of the Listed Assets, such bid, when aggregated together with all other Successful Bid(s) by Qualified Bidders for other Lots, must exceed the value of the highest and best Qualified Bid for the Listed Assets in bulk.

At the same time the Trustee will, after consultation with counsel for the Bank and Committee, advise counsel for the Bank, counsel for the Committee and any Qualified Bidders of the second highest Qualified Bid(s) for the Listed Assets in hulk or lots (the "Back-Up Bid") which the Trustee will accept as replacement Successful Bid(s) if closing under the Successful Bid(s) does not occur within the deadline set by these procedures, provided that such acceptance shall not relieve the initial Successful Bidder(s) of their obligations under their bids.

## Acceptance of Qualified Bids

The Trustee shall sell the Listed Assets to the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Bankruptcy Court after a hearing (the "Sale Hearing"). Presentation of a particular Successful Bid to the Bankruptcy Court for approval does not constitute acceptance of the bid. The Trustee will be deemed to have accepted a Successful Bid or Back-Up Bid only when such bid has been approved by the Bankruptcy Court at the Sale Hearing and, in the case of a Back-Up Bid, the Trustee has notified the bidder that its bid has been designated the replacement Successful Bid. The Trustee and Successful Bidder(s) will close on the sale of the Listed Assets no later than December 18, 2009.

## Sale Hearing

The Sale Hearing to consider the sale and the assumption and assignment of the Designated Contracts and Added Contracts will be held before the Honorable Susan Pierson Sonderby on _____, 2009[2] at \_\_\_\_\_ a.m. (prevailing Central time) at the United States Bankruptcy Court for the Eastern District of Illinois, Courtroom 642, 219 S. Dearborn Street, Chicago, Illinois, subject to adjournment or rescheduling without further notice by an announcement of the adjourned date at the Sale Hearing. _____, 2009 at 5:00 p.m. (prevailing Central time)[3] shall be the deadline for filing objections to the sale, the assumption or assignment of Designated Contracts and Added Contracts and to the amount of Cure Costs for any such contract; provided that any party in interest shall have the right to appear and be heard at the Sale Hearing with respect to the Trustee's selection of the Successful Bid(s) or rejection of

---

[2] Proposed to be 6 Business Days after potential Auction.

[3] Proposed to be 4 Business Days after potential Auction and 9 Business Days after the Bid Deadline.

a bid. The Lender shall have standing to appear and be heard at the Sale Hearing even if it is not the Successful Bidder.

Following the Sale Hearing approving the sale of Listed Assets to the Successful Bidder(s), if a Successful Bidder fails to consummate an approved sale and the assumption and assignment of the Designated Contracts and Added Contracts, the next highest or otherwise best Qualified Bid for the relevant Listed Assets, as disclosed at the Sale hearing, shall be deemed to be the Successful Bid and the Trustee shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such bid without further order of the Bankruptcy Court.

### Objection Deadline

All objections to the Sale, the assumption or assignment of Designated Contracts and Added Contracts and to the amount of Cure Costs shall be in writing, filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois and served on: (a) counsel for the Trustee, John Collen, Tressler LLP, 233 S. Wacker Drive, 22nd Floor, Chicago, IL 60606, Fax: (312) 627-1717, (b) counsel for the Lender, Schiff Hardin LLP, 233 South Wacker Drive, Suite 6600, Chicago, IL 60606, Attn: J. Mark Fisher and Jason M. Torf, Fax: (312) 258-5700; (c) counsel to the Committee, Richard S. Lauter, Freeborn & Peters LLP, 311 S. Wacker Drive, Suite 3000, Chicago, IL 60606-6677; Fax: (312) 360-6570, and (d) the United States Trustee, 219 S. Dearborn Street, Room 873, Chicago, IL 60604, Attention Stephen G. Wolfe, Fax: (312) 886-5794, and shall be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, in each case to allow actual receipt of the foregoing no later than _____, 2009 at _____ p.m. (prevailing Central time).

### Return of Good Faith Deposits

The Good Faith Deposit of the Qualified Bidder submitting the Successful Bid(s) and Back-Up Bid(s) shall be held in an interest-bearing escrow account until the earlier of (a) consummation of the sale to the applicable Successful Bidder of the Listed Assets to which the Back-Up Bid relates or (b) thirty (30) days after the entry of the Sale Order. All other Good Faith Deposits shall be returned to the bidders promptly after the close of the Auction. If a Successful Bidder, or Qualified Bidder deemed to have submitted a Successful Bid, fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder or Qualified Bidder, the Trustee shall be entitled to retain the Good Faith Deposit as a non-exclusive remedy and part of the Debtor's damages resulting from the breach or failure to perform by such Successful Bidder or Qualified Bidder.

### Modifications

After consultation with counsel for the Bank and counsel for the Committee as discussed above, the Trustee may (a) determine which Qualified Bid(s) is/are the highest and best bid(s) for all or a portion of the Listed Assets; (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Sale & Bidding Procedures, or

7

the terms and conditions of sale, or (iii) contrary to the best interests of Debtor, its estate and creditors, and (c) reconsider and change its designation of any Qualified Bid on all or a portion of the Listed Assets as the Successful Bid up to the time of the Bankruptcy Court's entry of an order approving the applicable Sale.