KSN REV 12/6/2009 10 pm

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 09-29024 |
| | Chapter 11 |
| ARENA FOOTBALL LEAGUE, LLC, | |
| | Hon. Susan Pierson Sonderby |
| Debtor. | |
| | Hearing: December 7, 2009, at 11 a.m. |

## ORDER (A) APPROVING THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (B) GRANTING CERTAIN RELATED RELIEF

Upon the emergency motion (the "*Motion*") of Alex Moglia, not individually, but solely as the chapter 11 Trustee (the "*Trustee*") for the estate of Arena Football League, LLC (the "*Debtor*"), for entry of orders pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) (A) approving bidding procedures for the sale of certain of Debtor's assets to the highest and best bidder; (B) scheduling an auction and hearing to consider the sale and approve the form and manner of notice related thereto; (C) establishing procedures relating to the assumption and assignment of certain contracts, including notice of proposed cure amounts; and (D) granting related relief; and the Court having reviewed the Motion and having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and after due deliberation thereon; the Court being fully advised in the premises; and good and sufficient cause appearing therefore, it is hereby,

AR901:90100\720316.1

AR901:90100\729381.1

**FOUND AND DETERMINED THAT**[1]

A. **Jurisdiction and Venue.** The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(A) and (N). Venue of this Chapter 11 case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates.** The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014.

C. **Involuntary Bankruptcy and Conversion to Voluntary Chapter 11 and Appointment of Chapter 11 Trustee.** On August 7, 2009 an involuntary petition was filed in this Court against the Debtor under chapter 7 of title 11 of the United States Code (the *"Bankruptcy Code"*). On August 26, 2009 the Debtor consented to the entry of an order for relief under Chapter 11 of the Bankruptcy Code (the *"Petition Date"*).

D. **Entry of Bidding Procedures Order.** On October 21, 2009, this Court entered an order (the *"Bidding Procedures Order"*) (i) approving certain bidding procedures (the *"Bidding Procedures"*), (ii) granting certain bid protections to the Purchaser, (iii) approving the manner of notice of the Motion, the Auction, the Bidding Procedures, the Sale Hearings, and the assumption and/or assignment of the Assigned Contracts, (iv) approving the form of notice of the Motion, the Auction, the Bidding Procedures and the Sale Hearings to be distributed to parties-in-interest, including prospective bidders, (v) setting the Sale Hearing.

E. **Compliance with Bidding Procedures Order.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

2

representations of counsel made on the record at the Sale Hearing, the Trustee has marketed substantially all of the Debtor's assets (the "*Assets*") and conducted the sale process in compliance with the Bidding Procedures Order and the Auction was duly noticed and conducted in a non-collusive, fair and good faith manner. The Trustee and his professionals have actively marketed the Assets and conducted the sale process in compliance with the Bidding Procedures and Bidding Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers.

F.  **Notice**. As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of (a) the Motion, (b) the Auction, (c) the Bidding Procedures, (d) the Sale Hearings, (e) the Sale, (f) the assumption and/or assignment of the Assigned Contracts (collectively, the "*Requested Relief*"), has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and in compliance with the Bidding Procedures Order (including notice by publication in the Wall Street Journal (U.S. Edition) on November 13, 2009 and the websites of Sports Business Journal (www.sportsbusinessjournal.com) and Sports Business Daily (www.sportsbusinessdaily.com) available November 16, 2009 through and including November 22, 2009); (ii) such notice was good and sufficient, and appropriate under the particular circumstances, including, without limitation, with respect to parties or entities that may have claims against the Debtor, but whose identities are not reasonably ascertainable by the Trustee, and (iii) no other or further notice of the Requested Relief is or shall be required. The disclosures made by the Trustee concerning the Requested Relief were good, complete and adequate.

G. **Corporate Authority**. Upon entry of this Order, and provided it is not stayed, the Trustee shall have full corporate power and authority to execute, deliver and perform the Asset Purchase Agreement (the *"APA"*) and all other documents contemplated thereby.

H. **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Requested Relief has been afforded to all interested persons and entities, including, without limitation: (i) those persons filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in this chapter 11 cases; (ii) the Office of the United States Trustee for the Northern District of Illinois (iii) counsel for Fifth Third Bank ("*5/3*"); (iv) the Purchaser and counsel for the Purchaser; (v) all entities known to have expressed an interest in a transaction with respect to any of the Assets; (vi) parties asserting encumbrances on any of the Assets; and (vii) all creditors of the Debtor as identified on Schedules D through H of the Debtor's Schedules of Assets and Liabilities filed with the Court.

I. **Sale in Best Interest**. Consummation of the sale of the Assets at this time is in the best interests of the Debtor, its creditors, its estate, and other parties in interest and affords the best available means of maximizing the value of this estate.

J. **Business Justification**. Sound business reasons exist for the sale and the other Requested Relief. Entry into the APA constitutes the Trustee's exercise of sound business judgment and such act is in the best interests of the Debtor, its estate, and all parties in interest. The Court finds that the Trustee has articulated good and sufficient business reasons justifying the sale and the Requested Relief. Such business reasons include, but are not limited to, the following: (i) the APA constitutes the highest and best offer for the Assets; and (ii) the APA and the closing thereon will present the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets.

K. **Arm's Length Sale**. The APA was negotiated, proposed and entered into by the Trustee and the Purchaser without collusion, in good faith, not by any means forbidden by law and from arm's length bargaining positions. Neither the Trustee nor the Purchaser have engaged in any conduct that would cause or permit the APA to be avoided under 11 U.S.C. § 363(n).

L. **Good Faith Purchaser**. The Purchaser is a good faith Purchaser under 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby. There was no collusion between the Purchaser and any other person or entity to control the price of the sale. The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the APA at all times after the entry of this Order.

M. **Consideration**. The Trustee conducted a Sale process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets. The Auction resulted in active and vigorous bidding. The Auction generated a sales price well in excess of the $2.5 million stalking horse bid and the $2.675 million highest and best bid that was the leading bid going into the Auction on November 25, 2009. The winning bid at the auction was $6.1 million, an increase above the stalking horse bid of almost 250%. The consideration provided by the Purchaser for the Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

5

under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

N. **Free and Clear**. Except as set forth in the next sentence, the Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Assets to the Purchaser was not free and clear of all Claims and Interests (as those terms are defined in the APA), or if the Purchaser would, or in the future could be liable for any of such Claims and Interests. The Purchaser is aware that Steve Woltmann claims an ownership interest (the "*Alleged Woltmann Interest*") in certain photographs in the possession of the Trustee (the "*Contested Property*") and has agreed to purchase the Assets subject to the Alleged Woltmann Interest with full right to contest same in this Court or in another court of competent jurisdiction. The Trustee may sell the Assets free and clear of all Claims and Interests (except the Contested Property and Alleged Woltmann Interest) because, with respect to each creditor asserting an encumbrance, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. In consideration of the prompt payment of the proceeds of sale to 5/3 at Closing, subject to agreed upon "Carve-outs" set forth in Final Order (I) Authorizing the Trustee to Obtain Post-Petition Secured Financing, (II) Granting Certain Liens, (III) Granting Adequate Protection, (IV) Funding Segregated Account with Cash Collateral, and (V) Modifying the Automatic Stay (as amended, the "*Final Borrowing Order*"), 5/3 has consented to the sale of the Assets free and clear of its "Pre-Petition Liens" and "Post-Petition Liens" (as those terms are defined in the Final Borrowing Order. Those holders of liens, claims, interests or encumbrances who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims, interests or encumbrances who did object fall within one or more

of the other subsections of section 363(f) of the Bankruptcy Code. The Purchaser does not have any intention to assume any of Debtor's liabilities with respect to the Assets.

O.     **Assumption of Executory Contracts and Unexpired Leases**. The Purchaser does not request the assumption and assignment of any of the Debtor's executory contracts.

P.     **Prompt Consummation**. The Sale of the Purchased Assets must be approved and consummated promptly in order to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sale, and the Trustee and the Purchaser intend to close the Sale no later than December 18, 2009. To that end, Purchaser waived its right to require a "Final Order" (as that term is defined in the APA) approving the Sale as a condition to the Purchaser's obligation to close. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

Q.     **No Fraudulent Transfer**. The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration under the APA provided by the Purchaser is the highest and otherwise best offer received by the Trustee, and such consideration constitutes reasonably equivalent value for the Purchased Assets under the Bankruptcy Code and other applicable law.

R.     **Purchaser Not Insider**. Immediately prior to the Closing Date, the Purchaser was not an "insider" or "affiliate" of the Debtor, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed

between the Purchaser and the Debtor. Pursuant to the APA, the Purchaser is not purchasing all of the Debtor's assets in that the Purchaser is not purchasing any of the Excluded Assets, and the Purchaser is not holding itself out to the public as a continuation of the Debtor. The Sale is not a consolidation, merger or de facto merger of the Purchaser and the Debtor or the Debtor's estate, because each now has, and will retain after closing, a distinct corporate identity that is either known or reasonably knowable to any creditor of this estate.

S.     **Legal, Valid Transfer**. The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtor to the Assets free and clear of all liens, claims and encumbrances, except as set forth in the APA.

T.     **Secured Lender and Creditors Committee Support the Sale**. Both 5/3 and the Creditors' Committee support the consummation of the Sale described herein.

It is therefore **ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.     The Motion is GRANTED, as further described herein.

2.     All objections and responses to the Motion or the relief requested therein are resolved in accordance with the terms of this Order, and to the extent any such objection or response has not otherwise been withdrawn, waived, or settled as provided herein (and all reservations of rights included therein), are overruled on the merits and denied with prejudice.

**Approval of the Sale of the Purchased Assets**

3.     The APA, and all of the terms and conditions therein, are hereby approved.

4. Pursuant to 11 U.S.C. § 363(b), the Sale of the Purchased Assets to the Purchaser free and clear of all Claims and Interests, and the transactions contemplated thereby are approved in all respects.

5. Except for the Alleged Woltmann Interest in the Contested Property or as otherwise specifically provided in the APA or this Order, the Purchaser shall not be liable for any claims against the Trustee, the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Trustee, the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Assets prior to the Closing Date.

6. The Purchaser is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, which protections are hereby conferred.

7. Pursuant to 11 U.S.C. § 363(b), the Trustee is hereby authorized to sell the Assets to the Purchaser and consummate the Sale in accordance with and subject to the terms and conditions of the APA, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the APA. The Trustee is further authorized to execute and deliver, and is empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, including without limitation the related documents, exhibits and schedules,

AR901:90100\729381.1

for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the Trustee's obligations as contemplated by the APA. The Parties shall have no obligation to proceed with the closing of the APA until all conditions precedent to their obligations to do so as set forth in Articles VI, VII and VIII thereof have been satisfied or waived.

**Transfer of Purchased Assets**

8.    Pursuant to 11 U.S.C. § 363(b) and 363(f), the Assets shall be transferred to the Purchaser upon consummation of the APA (the "*Closing Date*") free and clear of all liens, claims, interests and encumbrances of any kind or nature whatsoever (except for the Alleged Woltmann Interest in the Contested Property), with all such Claims and Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Assets, subject to any claims and defenses the Trustee may possess with respect thereto.

9.    All entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date.

10.    Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities (except for the Alleged Woltmann Interest in the Contested Property), including, but not limited to, all members of the Debtor, security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Claims and Interests of any kind or nature whatsoever against or in the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the

AR901:90100\729381.1

Debtor, the Assets, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Assets, such persons' or entities' Claims and Interests on and after the Closing Date of the sale.

11. Subject to the terms and conditions of this Order, the transfer of the Assets to the Purchaser pursuant to the APA constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Assets free and clear of all Claims and Interests of any kind or nature whatsoever (except for the Alleged Woltmann Interest in the Contested Property), with any such Claims and Interests (except for the Alleged Woltmann Interest in the Contested Property) to attach to the proceeds of the sale.

**Assumption and/or Assignment of Executory Contracts**

12. The Purchaser neither requests nor requires the assumption and assignment of any executory contracts of the Debtor. The Purchaser shall have no liability under any unexpired lease or executory contract of the Debtor because no assignment is taking place.

**Additional Provisions**

13. The consideration provided by the purchaser under the APA is reasonably equivalent value and fair consideration for the Assets.

14. The consideration provided by the Purchaser for the Assets under the Personal Property APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

15. This Order (a) shall be effective as a determination that, on the Closing Date, all liens, claims, interests and encumbrances of any kind or nature whatsoever existing as to the Debtor or the Assets prior to the Closing Date (except for the Alleged Woltmann Interest in the

Contested Property) shall attach to the proceeds of the sale, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

16. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

17. The Purchaser shall have no liability or responsibility for any liability or other obligation of the Trustee or the Debtor arising under or related to the Assets, except for the Alleged Woltmann Interest in the Contested Property or as otherwise expressly provided for in the APA or this Order. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the APA, the Purchaser shall not be liable for any Claims (as such term is defined in section 101(5) of the Bankruptcy Code) against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor liabilities of any kind or character, including, but not limited to, any theory of antitrust, products liability, environmental, successor or transferee liability, labor or civil rights law, ERISA law, federally protected right, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, with respect to the Trustee, the Debtor or any obligations of the

AR901:90100\729381.1

Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

18. Effective upon the Closing Date, and except as otherwise expressly provided for in the APA or this Order, persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or in equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors and assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors and assigns, assets or properties; (iii) creating, perfecting or enforcing any Claims and Interests against the Purchaser, its successors and assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors and assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating of failing or refusing to issue or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets. Nothing herein prejudices the right of any party to enforce the APA and the terms of this Order.

19. The sale, transfer, assignment and delivery of the Assets shall not be subject to any Claims and Interests against or in the Debtor (except for the Alleged Woltmann Interest in

the Contested Property), and such Claims and Interests of any kind or nature whatsoever (except for the Alleged Woltmann Interest in the Contested Property) shall remain with, and continue to be obligations of, the Debtor. All persons holding Claims and Interests against or in the Debtor or the Assets of any kind or nature (except for the Alleged Woltmann Interest in the Contested Property) whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Claims and Interests of any kind or nature whatsoever against the Purchaser, its property, its successors and assigns, or the Assets with respect to any Claims and Interests of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtor, its estate, officers, directors, shareholders, or the Assets. Following the Closing Date, no holder of a Claim or Interest in or against the Debtor (except for the Alleged Woltmann Interest in the Contested Property) shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Claim or Interest, or any actions that the Trustee may take in the Debtor's chapter 11 case.

20. Without further order of this Court, the Trustee shall pay to 5/3 or its direction in immediately available funds the Purchase Price received from the Sale after deducting the Carve-Outs set forth in Section 8 of the Final Order. Said payment shall be applied to the principal balance of 5/3's Pre-Petition Secured Obligations. The Trustee shall hold such Carve-Outs in separate segregated cash-collateral accounts (each, a "*Carve-Out Account*") until the allowed amount of the claims to be paid therefrom are determined. Upon the payment of the claim for which the Carve-Out was established, any balance remaining in any such Carve-Out Account shall be remitted to 5/3 as promptly as practicable.

21. This Court shall retain jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not

AR901:90100\729381.1

limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Trustee, (c) the validity or invalidity of the Alleged Woltmann Interest in the Contested Property, (d) resolve any disputes arising under or related to the APA, except as otherwise provided therein, (e) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser against (i) any of the excluded liabilities or (ii) any Claims and Interests against or in the Debtor or the Assets, of any kind or nature whatsoever, whether attaching to the proceeds of the sale subject to the terms of this Order or otherwise.

22.  The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Debtor, its estate, and its creditors, the Purchaser, and its respective affiliates, successors and assigns, any affected parties including, but not limited to, all persons asserting Claims and Interests in the Assets to be sold to the Purchaser pursuant to the APA, and any successor trustee appointed in this chapter 11 case. The APA shall not be subject to rejection or avoidance under any circumstances.

23.  Notwithstanding anything to the contrary contained herein, the Bidding Procedures Order remains in full force and effect and shall be binding on the Trustee and the Purchaser in all respects.

24.  The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

25.  The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any

such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

26. This Court reserves jurisdiction to construe and enforce this Order.

27. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this Order.

28. The parties are authorized and directed to close the transaction documented by the APA, with a purchase price consideration of $6.1 million cash.

29. The provisions of this Order are nonseverable and mutually dependent.

30. All objections not withdrawn are herby overruled.

31. The photographs that are the subject of the alleged Woltmann interest shall be retained by the Trustee pending further order of this Court. It shall be the Purchaser's sole responsibility, and the Trustee shall have no responsibility, to assert and defend this Estate's right title and interest in such photographs, and Purchaser shall indemnify and hold harmless the Trustee and this estate from claims, demands and causes of action asserted by Woltmann.

32. To the extent that any provision of this Order conflicts with the APA, this Order shall control.

Dated: Chicago, Illinois

DEC 0 7 2009

ENTERED:

_____
UNITED STATES BANKRUPTCY JUDGE

CH2\8139900.2

AR901:90100\729381.1